**BURSOR & FISHER, P.A.**
Joel D. Smith (State Bar No. 244902)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: jsmith@bursor.com

**BURSOR & FISHER, P.A.**
Frederick J. Klorczyk III (State Bar No. 320783)
Matthew A. Girardi (*PHV* forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: fklorczyk@bursor.com
         mgirardi@bursor.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORINA

| | |
|---|---|
| JOSE ALVAREZ TOLEDO, individually and on behalf of all other persons similarly situated,<br><br>                              Plaintiff,<br><br>          v.<br><br>TESLA, INC.,<br><br>                              Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Jose Alvarez Toledo ("Plaintiff") brings this class action against Tesla, Inc. ("Tesla" or "Defendant"), individually and on behalf all others similarly situated.  The allegations herein are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to all other matters based on an investigation by counsel.

## NATURE OF THE ACTION

1.      Many automatic driving and safety features found in new cars today are the first steps toward fully autonomous cars.  Tesla touts itself as a leader in this field.

2.      Tesla designed, tested, validated, marketed, and sold its advanced driver assistance system ("ADAS"), branded as its "Autopilot" system ("Autopilot") that is featured in every Tesla vehicle, including the "Class Vehicles"[1]).  According to Tesla itself:

> Tesla cars come standard with advanced hardware capable of providing Autopilot features, and full self-driving capabilities—through software updates designed to improve functionality over time… Autopilot advanced safety and convenience features are designed to assist you with the most burdensome parts of driving. Autopilot introduces new features and improves existing functionality to make your Tesla safer and more capable over time. Autopilot enables your car to steer, accelerate and brake automatically within its lane.[2]

3.      Furthermore, Tesla states that "standard safety features will continue to be active on all new cars" including "Automatic Emergency Braking[,]" which Tesla describes as "Designed to detect objects that the car may impact and applies the brakes accordingly."[3] (Hereinafter, the "Autopilot AEB" system)

4.      The problem is that Tesla is rushing these features to market when the technology is not yet ready and not yet safe.  That is what this case is about.  Tesla's Autopilot and AEB Systems have a defect that causes the Class Vehicles' brakes to falsely engage randomly and unexpectedly (the "Sudden Unintended Braking Defect" or the "Defect").  The Sudden Unintended Braking Defect causes the Class Vehicles to detect non-existent obstacles, thereby automatically triggering the brakes and causing the Class Vehicles to abruptly slow down or come to a complete stop,

---

[1] The Class Vehicles include, but are not necessarily limited to, the 2021 and 2022 Model Year Tesla Model 3 & Tesla Model Y.

[2] https://www.tesla.com/autopilot

[3] *Id.*

sometimes in the middle of traffic.  Simply put, as a result of the Defect, the Autopilot and AEB systems at issue here are a safety hazard, not a safety feature.

5.     Many Tesla owners have reported significant, unexpected slow-downs and stops due to the false engagement of their Class Vehicle's braking systems, even though no objects were nearby.  When the Sudden Unintended Braking Defect Occurs, they turn what is supposed to be a safety feature into a frightening and dangerous nightmare.

6.     The National Highway Traffic Safety Administration ("NHTSA") has fielded hundreds of individual complaints in the last three years from drivers of Tesla vehicles.

7.     The Sudden Unintended Braking Defect is substantially likely to materialize during the useful life of the vehicles in which the systems are installed.  Plaintiff has himself experienced the Sudden Unintended Braking Defect, and numerous car owners have publicly complained about the problem to NHTSA and on various internet forums.

8.     Tesla has known about problems with its Autopilot and AEB systems for years but has been silent.  Disclosing the Sudden Unintended Braking Defect would likely: (1) put Tesla at a competitive disadvantage both in safety ratings and in the race to get autonomous safety features on the market; (2) have a negative impact on Tesla's brand; and (3) reduce profits from sales. Instead, Tesla markets its vehicles as safe, despite its knowledge that the vehicles are defective and not fit for their intended purpose of providing consumers with safe and reliable transportation at the time of the sale and thereafter.  Tesla has actively concealed the true nature and extent of the Sudden Unintended Braking Defect from Plaintiff and the other Class members and has failed to disclose it to them at the time of purchase or lease or thereafter.

9.     Had Plaintiff and other Class members known about the Sudden Unintended Braking Defect, they would not have purchased and/or leased the Class Vehicles on the same terms or would have paid less for them.  As a result of their reliance on partial representations and/or omissions by Defendant, Plaintiff and the other Class members have suffered a loss of money and/or loss in value of their Class Vehicles.

10.     Tesla knew about the existence of the Sudden Unintended Braking Defect from, among other things, pre-production testing, consumer complaints, warranty data, dealership repair orders, and NHTSA investigations.

11.     Despite its knowledge of the Sudden Unintended Braking Defect, Tesla has not recalled the Class Vehicles to repair the Defect, has not offered Plaintiff and the other Class members a suitable repair or replacement free of charge, and has not offered to reimburse Plaintiff and the other Class members for the value consumers paid for the Autopilot AEB features in the first place.

12.     Tesla has refused to repair or replace the Class Vehicles despite the fact that the Class Vehicles are under a comprehensive warranty, as explained in detail below.

13.     Thus, Tesla has wrongfully and intentionally transferred the cost of repair of the Sudden Unintended Braking Defect to Plaintiff and the other members of the Class by fraudulently concealing its existence.

14.     Under the warranties provided to Plaintiff and the other members of the Classes, Tesla promised to repair or replace defective Autopilot AEB system components arising out of defects in materials and/or workmanship, such as the Sudden Unintended Braking Defect, at no cost to owners or lessors of the Class Vehicles. For illustrative purposes, Tesla offers a Basic Warranty that "covers the repair or replacement necessary to correct defects in the materials or workmanship of any parts manufactured or supplied by Tesla under normal use for a period of 4 years of 50,000 miles (80,000 km), whichever comes first."[4]

15.     Tesla breached its express and implied warranties through which it promised to, *inter alia*, (1) provide Class Vehicles fit for the ordinary purpose for which they were sold; and (2) repair and correct manufacturing defects or defects in materials or workmanship of any parts they supplied, including in the Autopilot AEB systems. Because the Sudden Unintended Braking Defect was present at the time of sale or lease of the Class Vehicles, Tesla is required to repair or replace the Class Vehicles pursuant to the terms of the warranty. Instead, Tesla has wrongfully shifted the

---

[4] Tesla, New Vehicle Limited Warranty Booklet
https://www.tesla.com/sites/default/files/downloads/tesla-new-vehicle-limited-warranty-en-us.pdf
(last visited July 11, 2022)

cost of repairing the Defect, or replacing the vehicle, to Plaintiff and the other Class members. These costs are significant, and no reasonable consumer expects to incur such costs.

16.     Tesla possesses exclusive and superior knowledge and information regarding the Sudden Unintended Braking Defect. Despite this, Tesla has failed to notify Plaintiff and the other Class members of the Defect, who could not have reasonably discovered the Defect through due diligence. Similarly, Tesla has failed to provide Plaintiff and the other Class members with any fix or remedy for the Defect, despite voluminous customer complaints.

17.     While promoting the standard, quality, and/or grade of the Class Vehicles, Tesla knowingly concealed/omitted, and actively conceals, the existence of the Defect at the time of purchase or lease or otherwise to increase its profits and decrease its costs (by selling additional Class Vehicles and transferring the cost of the repair of the Defect, or replacement of the vehicle, to Plaintiff and the other Class members).

18.     Tesla knowingly omitted, concealed, and suppressed material facts regarding the Sudden Unintended Braking Defect, and misrepresented the standard, quality, or grade of the Class Vehicles, all at the time of purchase or lease or otherwise, which directly caused harm to Plaintiff and the other members of the Class.  As a direct result of Tesla's wrongful conduct, Plaintiff and the other members of the Class have suffered damages, including, *inter alia*: (1) out-of-pocket expenses for repair of the Defect; (2) costs for future repairs or replacements; (3) sale of their vehicles at a loss; (4) diminished value of their vehicles; and/or (5) the price premium attributable to the Autopilot feature.

19.     Plaintiff and the other Class members therefore assert claims against Tesla for fraud, breach of express and implied warranties, violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*, violation of statutory deceptive trade practices laws of California, and unjust enrichment. As alleged herein, Tesla's wrongful conduct has harmed owners and lessors of the Class Vehicles, and Plaintiff and the other members of the Class are entitled to damages and injunctive and declaratory relief.

**JURISDICTION AND VENUE**

20.     This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question). This Court has jurisdiction over supplemental state law claims pursuant to 28 U.S.C. § 1367.

21.     This Court also has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 members of the Classes, members of the Class (as defined below) are citizens of states different from Defendant, and greater than two-thirds of the members of the Class reside in states other than the states in which Defendant is a citizen.

22.     This Court has specific jurisdiction over Tesla because Tesla conducts substantial business in this District and most of the actions which gave rise to the claims took place in this District.  Plaintiff purchased his vehicle in this District.  Further, Plaintiff's and the putative classes' vehicles were manufactured at Tesla's factory located at 45500 Fremont Boulevard, Fremont, CA 94538.  As Tesla itself states, "every Model S, Model X and Model 3 [is] built in Fremont, where the vast majority of the vehicle's components are also made."[5]  Further, products, materials, or things processed, serviced, or manufactured by Tesla anywhere were used or consumed in this state in the ordinary course of business, commerce, trade, or use. Tesla has, at all relevant times, conducted and continues to conduct business all over the country, including in California.

23.     Venue properly lies in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Tesla is subject to personal jurisdiction in this District.

**PARTIES**

**Plaintiff**

24.     Plaintiff Jose Alvarez Toledo is domiciled in California and resides in San Francisco, California.

_____
[5] https://www.tesla.com/factory

25.     Plaintiff Alvarez Toledo ordered a new 2021 Tesla Model 3 from Tesla Inc. at a Tesla location in San Jose, California in or around November 2020.   Plaintiff Alvarez Toledo's vehicle was delivered to him in January 2021.  Plaintiff Alvarez Toledo's vehicle is a Class Vehicle equipped with the defective Autopilot system.

26.     Prior to purchasing his Class Vehicle, Plaintiff Alvarez Toledo reviewed Tesla's promotional materials, such as Tesla's website, Tesla's YouTube content and the Monroney sticker, and interacted with at least one sales representative.  None of these sources disclosed the Sudden Unintended Braking Defect.

27.     Through his exposure and interaction with Tesla, Plaintiff Alvarez Toledo was aware of Tesla's uniform and pervasive marketing message of dependability and safety, which is a primary reason he purchased his Class Vehicle.  However, despite touting the safety and dependability of the Class Vehicles and Autopilot system, at no point did Tesla disclose the Sudden Unintended Braking Defect to him.

28.     Plaintiff Alvarez Toledo has experienced the Sudden Unintended Braking Defect on several occasions since he started driving his Class Vehicle.  Specifically, Plaintiff Alvarez Toledo has twice been operating his Class Vehicle under intended and foreseeable circumstances using the autopilot system, when his vehicle suddenly engaged the brakes and reduced his speed by about half.

29.     Plaintiff Alvarez Toledo did not receive the benefit of his bargain. He purchased a vehicle of lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The Sudden Unintended Braking Defect has significantly diminished the value of Plaintiff Alvarez Toledo's Class Vehicle.

30.     Had Tesla disclosed the Sudden Unintended Braking Defect, Plaintiff Alvarez Toledo would not have purchased his Class Vehicle, or certainly would have paid less to do so.

**Defendant**

31.     Defendant Tesla Inc. is a Delaware corporation with its principal place of business in Austin, Texas.  Tesla engages in the design, manufacturing, advertising, and marketing of Tesla

automobiles, including the Class Vehicles. It markets and sells the Class Vehicles nationwide, including in California.  Tesla manufactured every Class Vehicle, including Plaintiff's Class Vehicle, and the majority of the Class Vehicle components, at its factory located at 45500 Fremont Boulevard, Fremont, CA 94538.[6]

**FACTS COMMON TO ALL CAUSES OF ACTION**

**A.      The Sudden Unintended Braking Defect**

32.      As Tesla states on its website, "Tesla cars come standard with advanced hardware capable of providing Autopilot features, and full self-driving capabilities—through software updates designed to improve functionality over time."[7]

33.      As demonstrated below, the Autopilot system utilizes a camera system to monitor the vehicle and surrounding objects.



---

[6] https://www.tesla.com/factory

[7] https://www.tesla.com/autopilot

34.     Tesla advertises its Autopilot system as including "Standard Safety Features" including "Automatic Emergency Braking" ("AEB"), which is "Designed to detect objects that the car may impact and applies the brakes accordingly."[8]



**Standard Safety Features**

The following standard safety features will continue to be active on all new cars.

**Automatic Emergency Braking**

Designed to detect objects that the car may impact and applies the brakes accordingly

**Side Collision Warning**

Warns the driver of potential collisions with obstacles alongside the car

**Front Collision Warning**

Helps warn of impending collisions with slower moving or stationary cars

**Auto High Beams**

Adjusts high/low beams as required

35.     However, the Sudden Unintended Braking Defect causes the Class Vehicles to detect non-existent obstacles, triggering a braking response and causing the Class Vehicles to abruptly decelerate or stop completely, despite no need for this action.  The Defect presents a safety hazard that distracts the Class members and renders the Class Vehicles unreasonably dangerous to consumers because it severely impacts a driver's ability to control vehicle speed as expected under normal driving conditions and maintain an appropriate speed based on traffic flow, thereby increasing the risk of a rear-end collision.

36.     All Class Vehicles use the same Autopilot system.  Sudden Unintended Braking Defect affects all Class Vehicles.

37.     The AEB system at issue here is part of Tesla's advanced driver-assistance system ("ADAS").  Other car manufacturers have similar ADAS systems in their own vehicles.  However, Tesla's ADAS system stands out in the crowd because Tesla makes up for nearly 70 percent of U.S. ADAS-related crashes.[9]

38.     The first-ever mandated release of ADAS crash data took place in June 2022, revealing that 273 crashes involving ADAS have been linked to Tesla since July 2021.  Apart from Honda, who reported 90 crashes, no other automaker reported more than ten ADAS crashes during the one-year period.  At around the same time that the data was released, the National Highway

---

[8] *Id.*
[9] https://www.business-standard.com/article/international/nearly-70-of-car-crashes-linked-to-self-driving-in-us-were-tesla-report-122061600216_1.html

Traffic Safety Administration stepped up an existing probe into Tesla's Sudden Unintended Braking Defect.

**B.      Tesla's Knowledge of the Sudden Unintended Braking Defect**

39.      Tesla knew about the problem of false activations in its Autopilot AEB systems for years, including before it put the Class Vehicles on the market.  Tesla became aware of the Sudden Unintended Braking Defect through sources not available to Plaintiff and the other members of the Classes, including, but not limited to: pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Tesla, aggregate warranty data compiled by Tesla, testing conducted by Tesla in response to consumer complaints, and/or repair order and parts data received by Tesla.

40.      In addition, Tesla and other members of the automotive industry knew that, as a new and not fully developed technology, automatic braking and self-driving systems like the Autopilot system were prone to false braking activations.  Tesla manufactured and sold Class Vehicles equipped with this technology anyway.

41.      As further evidence of Tesla's pre-sale knowledge, the owner's manuals for the Class Vehicles alluded to the risk of false activations by stating "Several factors can affect the performance of Automatic Emergency Braking, causing either no braking or inappropriate or untimely braking, such as when a vehicle is partially in the path of travel or there is road debris. It is the driver's responsibility to drive safely and remain in control of the vehicle at all times. Never depend on Automatic Emergency Braking to avoid or reduce the impact of a collision."[10]

42.      This warning about the Autopilot AEB system was buried in small text in the middle of owner's manuals, which are several hundred pages long.  Notwithstanding the Autopilot AEB system being touted as a safety feature, Tesla never referenced or otherwise directed potential purchasers to this hidden disclaimer.  As such, class members would only see this disclosure, if at all, after they purchased or leased the vehicles and if they happened to fortuitously stumble upon it when reading the owner's manual.  Even then, however, the disclosure is too vague, cursory, and

---

[10] https://www.tesla.com/ownersmanual/modely/en_us/GUID-8EA7EF10-7D27-42AC-A31A-96BCE5BC0A85.html

non-specific to adequately warn anyone about the true scope and extent of the dangers of the Sudden Unintended Braking Defect.

43.     Tesla also began receiving an unusually large number of complaints about false activations almost immediately after the earliest Class Vehicles were put on the market in 2021. Tesla nonetheless continued to sell the Class Vehicles.

44.     Tesla had and continues to have a duty to fully disclose the true nature of the Sudden Unintended Braking Defect to Class Vehicle owners, among other reasons, because the Defect poses an unreasonable safety hazard; because Tesla had and has exclusive knowledge or access to material facts about the Class Vehicles' Autopilot AEB systems that were and are not known to or reasonably discoverable by Plaintiff and the other members of the Classes; and because Tesla has actively concealed the Defect from its customers at the time of purchase or repair and thereafter.

45.     Specifically, Tesla: (a) failed to disclose, at the time of purchase or repair and thereafter, any and all known material defects or material nonconformities of the Class Vehicles, including the Defect; (b) failed to disclose, at the time of purchase or repair and thereafter, that the Class Vehicles and their Autopilot AEB systems were not in good working order, were defective and prone to failure, and were not fit for their intended purpose; and (c) failed to disclose and/or actively concealed the fact that the Class Vehicles and their Autopilot AEB systems were defective, despite the fact that Tesla learned of the Defect before it placed the Class Vehicles in the stream of commerce.

46.     In May 2021, Tesla chief executive Elon Musk said planned modifications to the automated driving system would address "phantom braking," which some Tesla drivers have long complained about.[11]

47.     For example, one 2021 Tesla Model Y owner told the National Highway Traffic Safety Administration ("NHTSA") in October that "the car braked hard and decelerated from 80

---

[11] https://www.reuters.com/business/autos-transportation/us-nhtsa-asks-tesla-respond-by-june-20-brake-activation-probe-2022-06-03/

mph to 69 mph in less than a second. The braking was so violent, my head snapped forward and I almost lost control of the car," according to Reuters.[12]

48.    Between May 2021 and February 2022, the NHTSA "received 354 complaints alleging unexpected brake activation in 2021-2022 Tesla Model 3 and Model Y vehicles."[13]

49.    As a result of these complaints, in February of 2022, the NHTSA opened an "Preliminary Evaluation" into more than an estimated 416,000 2021 and 2022 model year Tesla Model 3 and Model Y electric vehicles to investigate potential problems with the EV's automated emergency braking (AEB) systems.[14]  AEB systems obviously need to be able to brake hard when there's a dangerous situation in the road, but more than 350 Tesla drivers reported to the NHTSA that their cars sometimes saw rapid deceleration "without warning, at random, and often repeatedly in a single drive cycle" when there were no obstacles in the road warranting such braking.[15]

50.    In early May of 2022, the NHTSA sent Tesla a letter (attached as Exhibit A) saying that over 750 Tesla owners had complained about the Sudden Unintended Braking Defect and asked the company to answer detailed questions about these incidents. NHTSA is requiring Tesla to submit a database that includes details on each of the 758 incidents, including when the cars were built, when they had their software updated, and information on any consumer complaints, crashes or lawsuits relating to these vehicles, among dozens of other bits of information.[16]

51.    In June of 2022, the NHTSA upgraded its investigation assessing 830,000 Tesla vehicles for phantom braking problems to an "engineering analysis."  This is the second, and final step taken before a recall is issued.[17]

---

[12] https://www.reuters.com/business/autos-transportation/us-nhtsa-asks-tesla-respond-by-june-20-brake-activation-probe-2022-06-03/

[13] https://static.nhtsa.gov/odi/inv/2022/INOA-PE22002-4385.PDF

[14] *Id.*; *see also* https://www.caranddriver.com/news/a40221055/nhtsa-tesla-information-phantom-braking/

[15] *Id.*

[16] https://www.caranddriver.com/news/a40221055/nhtsa-tesla-information-phantom-braking/

[17] https://www.collisionrepairmag.com/braking-point-nhtsa-reaches-final-phase-of-tesla-investigation/

52. Federal law requires automakers like Tesla to notify (and update) the National Highway Traffic Safety Administration of potential defects. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000). Accordingly, Tesla should (and does) monitor the NHTSA database to track reports of defective Autopilot AEB systems. From this source, Tesla knew that the Class Vehicles were experiencing unusually high levels of false engagements causing abrupt slow-downs or stops or deactivations.

53. The following example complaints filed by consumers with NHTSA and posted on the Internet demonstrate that the Sudden Unintended Braking Defect is a widespread safety hazard that continues to plague the Class Vehicles.  The complaints below are examples only, and do not represent the universe of complaints that Tesla received.  The number of complaints that Tesla received was unusually high, which put Tesla on further notice of the Defect.





**2021**
**TESLA MODEL 3**
4 DR AWD Later Release

**11** RECALLS

INVESTIGATIONS 4
COMPLAINTS 351

★★★★★
OVERALL SAFETY RATING

July 28, 2022 NHTSA ID NUMBER: 11476414

**Components: FORWARD COLLISION AVOIDANCE**

**NHTSA ID Number:** 11476414

**Incident Date** July 23, 2022

**Consumer Location** BASALT, CO

**Vehicle Identification Number** 5YJ3E1EB6MF****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

Had significant dangerous and scary Phantom breaking while driving on Highway 80 across Nevada. Seemed to be related to open highway with no vehicle visible on forward view during bright daylight. Sudden and deep breaking would occur at 75 mph or 80 mph repeatedly and with no apparent reason throughout the 12 hour drive. Was particularly pronounced when passing large semi-trucks. Would get sudden Phantom breaking just as Tesla would just get by a large truck. Could have caused serious event if another vehicle had been following. At first this just seemed inconvenient and unpredictable but in some cases seem like significant safety issue. Had to stop using system. Tried to report to Tesla but they have no way on their web site or private Tesla account to report.

1 Affected Product ▾

☐ **Request Research** (Services fees apply)



**2021**
**TESLA MODEL 3**
4 DR AWD Later Release

**11** RECALLS

INVESTIGATIONS 4
COMPLAINTS 351

★★★★★
OVERALL SAFETY RATING

July 19, 2022 NHTSA ID NUMBER: 11474754

**Components: FORWARD COLLISION AVOIDANCE**

**NHTSA ID Number:** 11474754

**Incident Date** July 19, 2022

**Consumer Location** FORT COLLINS, CO

**Vehicle Identification Number** 5yj3e1ec5mf****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

The adaptive cruise control system consistently phantom brakes in situations where there is no traffic in front of the vehicle while cresting rolling hills. Sometimes this braking is relatively minor (<5 mph) while other times it is aggressive enough that passengers lurch forward. At the worst, this happened approximately 10 times in 30 miles while going the speed limit of 80mph.

1 Affected Product ▾

☐ **Request Research** (Services fees apply)



July 18, 2022 NHTSA ID NUMBER: 11474626

**Components: UNKNOWN OR OTHER, FORWARD COLLISION AVOIDANCE**

**NHTSA ID Number:** 11474626

**Incident Date** February 4, 2022

**Consumer Location** BROOKLYN, NY

**Vehicle Identification Number** 5YJ3E1EAXMF****

**Summary of Complaint**

| | |
|---|---|
| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

Problems with phantom breaking while driving on the highways at speeds over 65mph. There will be no reason for breaking (I.e. the automatic breaking system picks up a truck driving on the opposite side of the road/direction and slams on the break aggressively) which can be a cause for a rear collision and whiplash for driver/passengers.

1 Affected Product ▾

☐ Request Research (Services fees apply)



July 16, 2022 NHTSA ID NUMBER: 11474222

**Components: FORWARD COLLISION AVOIDANCE**

**NHTSA ID Number:** 11474222

**Incident Date** July 15, 2022

**Consumer Location** RANCHO SANTA MARGARITA, CA

**Vehicle Identification Number** 5yj3e1ea0mf****

**Summary of Complaint**

| | |
|---|---|
| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

I engaged the cruise control while driving on the highway. I let go of the accelerator and it correctly kept the speed I had requested. It warned me that the car would not break. As the car passed another car (probably a police cruiser) that was parked in the ditch separating the two directions of the highway, the car suddenly applied the breaks and decelerated substantially. A pickup truck towing a trailer that was driving behind us was forced to swerve onto the right shoulder to avoid rear-ending our car.

1 Affected Product ▾

☐ Request Research (Services fees apply)



1
2
3
4
5
6
7
8
9
10
11
12
13



July 14, 2022 NHTSA ID NUMBER: 11473804

**Components: VEHICLE SPEED CONTROL, SERVICE BRAKES, FORWARD COLLISION AVOIDANCE**

**NHTSA ID Number:** 11473804

**Incident Date** July 11, 2022

**Consumer Location** CALISTOGA, CA

**Vehicle Identification Number** 5YJ3E1EB8MF****

**Summary of Complaint**

| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

While driving in Highway, Interstate or Freeway with cruise control enabled with or without autopilot the car suddenly breaks for no reason. It is a clear phantom break. It happened many times in different occasions even on the I40 with no car around in the middle of the Desert. In a couple of times a big truck was following and I was almost rear ended because this.

1 Affected Product ▾

☐ **Request Research** (Services fees apply)

14
15
16
17
18
19
20
21
22
23
24



July 8, 2022 NHTSA ID NUMBER: 11472970

**Components: FORWARD COLLISION AVOIDANCE**

**NHTSA ID Number:** 11472970

**Incident Date** June 30, 2022

**Consumer Location** SAN JOSE, CA

**Vehicle Identification Number** 5YJ3E1EB6MF****

**Summary of Complaint**

| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

There were 3 back-to-back incidents of phantom braking. Car was in Navigate on Autopilot mode on Highway 85 somewhere near Blossom Hill and going a 65mph (posted limit) but it slowed down dramatically causing the possibility of the car being rear-ended. There was no blocking vehicle or object that should have caused it to slow down and brake. In all three incidents, I was able to assume manual control and safely speed-up again.

1 Affected Product ▾

☐ **Request Research** (Services fees apply)

25
26
27
28



February 8, 2022 NHTSA ID NUMBER: 11451012

**Components: FORWARD COLLISION AVOIDANCE**

**NHTSA ID Number:** 11451012

**Incident Date** February 6, 2022

**Consumer Location** ASHEVILLE, NC

**Vehicle Identification Number** 5YJ3E1EB4MF****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | Phantom braking occurs intermittently since vehicle purchase while operating autopilot cruise control. My Tesla suddenly brakes without any vehicle ahead to warrant this action. Cars following me could easily slam into the rear of my car. Luckily that has not yet occurred. I have not noted any associated warning lights or alarms. I am awaiting replacement of the car computer (prompted by needing to reboot computer repeatedly), but this has been delayed several months due to parts unavailable. Consumer was unable to use cruise control because of the numerous times car brake mysteriously while driving on a freeway. Consumer reported the issue to Tesla and Tesla stated it was a bug immediately when it occurs. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

1 Affected Product ▾

☐ **Request Research** (Services fees apply)

February 3, 2022 NHTSA ID NUMBER: 11450117

**Components: VEHICLE SPEED CONTROL, SERVICE BRAKES, FORWARD COLLISION AVOIDANCE**

**NHTSA ID Number:** 11450117

**Incident Date** January 24, 2022

**Consumer Location** HERNANDO, FL

**Vehicle Identification Number** 5YJ3E1EA0MF****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | 1. Vehicle brakes for no reason while on Traffic Aware Cruise Control 2. At night on come head lights appear to cause braking while on Traffic Aware Cruise Control. 3. Vehicle brakes for no reason when on Traffic Aware Cruise Control when on two lane road (one lane each direction) when on coming large vehicle approaching. 4. Vehicle brakes for no apparent reason while on Traffic Aware Cruise Control when light conditions cause high contrast shadows on the road. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |





1 Affected Product ▾

☐ **Request Research** (Services fees apply)



**November 25, 2021**  NHTSA ID NUMBER: 11441689  ⊖

**Components: FORWARD COLLISION AVOIDANCE**

**NHTSA ID Number:** 11441689

**Incident Date** November 25, 2021

**Consumer Location** PASADENA, CA

**Vehicle Identification Number** 5YJ3E1EB3MF****

**Summary of Complaint**

| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

Terrible phantom braking. On a road trip, flat straight open roads, little to no traffic in front of me, and consistent full on hard braking from 75mph down to 35mph in a split second. Multiple times and so consistent I had to stop using the cruise control completely. This never happened like this in my day to day city driving. But as is, the cruise control is nerve wracking and dangerous. Thankfully no cars behind me because it could very easily cause a serious and deadly accident.

**1 Affected Product** ⌄

☐ **Request Research** (Services fees apply)



**November 23, 2021**  NHTSA ID NUMBER: 11441522  ⊖

**Components: FORWARD COLLISION AVOIDANCE**

**NHTSA ID Number:** 11441522

**Incident Date** November 23, 2021

**Consumer Location** OAK HARBOR, WA

**Vehicle Identification Number** 5YJ3E1EB3MF****

**Summary of Complaint**

| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

Recurrent, frequent, and unpredictable sudden braking while vehicle is being driven in TACC (Traffic Aware Cruise Control). These event, or "phantom brakes", occur when there is no visible obstruction ahead of the car (i.e. crossing vehicle or object), nor any environmental explanation (sun glare, heavy rain, etc.). Events occur in all conditions, including daytime, clear sky, with or without traffic. Frequently the collision warning will sound during these events. Given the episodes occur during highway driving, the unexpected hard braking is a set-up for being rear ended by cars behind me. These events are most common on 2 lane divided highways, and can occur as frequently as every 2-5 minutes. Brought in for evaluation at Tesla service center, and they refused to acknowledge any problem, stating the car is "operating as designed." This was based on the fact that they did not reproduce symptoms on their test drive. Although I had logged >20 of these events for them to review on the automated records, it was not clear this was done.

**1 Affected Product** ⌄

☐ **Request Research** (Services fees apply)



**2021**
**TESLA MODEL Y 5-SEAT**
SUV RWD

**12** RECALLS

INVESTIGATIONS 4
COMPLAINTS 526

★★★★★
**OVERALL SAFETY RATING**

July 14, 2022 NHTSA ID NUMBER: 11473864  ⊖

**Components: FORWARD COLLISION AVOIDANCE, LANE DEPARTURE**

**NHTSA ID Number:** 11473864

**Incident Date** July 10, 2022

**Consumer Location** MILL VALLEY, CA

**Vehicle Identification Number** 5YJYGDEE0MF****

**Summary of Complaint**

| | |
|---|---|
| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

On a roadtrip between California and Wyoming, the adaptive cruise control, full-self driving, and emergency breaking engaged for absolutely no reason on dozens of occasions - what I understand is termed "phantom breaking." This was so bad that on Sunday, July 10, I noted each severe incident. Some of these occurred with absolutely no traffic in the road, some during busier periods. In each case, it was scary and dangers -- to the point where my dog went flying off the seat. While this was an issue throughout the road trip, I only noted incidents on July 10, but please be aware this happened on many other days as well. Here are the significant incidents on July 10. Please note there were less severe incidents on this day that I didn't note because it would have been too many to count. 12pm mountain time just outside Idaho Falls, ID -- car braked with no warning from 70 MPH to 60 MPH 2pm mountain time - 77 miles outside twin falls, ID 256pm mountain time - right outside twin falls 408pm mountain time - heading south from Twin falls towards Nevada - - the car braked three times in rapid succession 447pm mountain time - heading south past Jackpot NV 450pm Mountain time - same 420pm Pacific time - 16 miles north of Wells NV, braking multiple times in succession 524pm pacific time - just west of Wells, NV, sudden braking from 85 mph to 65 mph 643pm pacific time - half way between Wells, NV and Winnemucca NV



**2021**
**TESLA MODEL Y 5-SEAT**
SUV RWD

**12** RECALLS

INVESTIGATIONS 4
COMPLAINTS 526

★★★★★
**OVERALL SAFETY RATING**

May 26, 2022 NHTSA ID NUMBER: 11466268  ⊖

**Components: FORWARD COLLISION AVOIDANCE**

**NHTSA ID Number:** 11466268

**Incident Date** May 26, 2022

**Consumer Location** EVERGREEN, CO

**Vehicle Identification Number** 5yjygdee7mf****

**Summary of Complaint**

| | |
|---|---|
| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

With AP and AS activated the vehicle will have multiple episodes of phantom braking. With no vehicle in front, next to, or behind for 100's of feet or even visible to the naked eye on a divided highway. No flashing lights, no moon visible, no signs just a straight stretch of flat highway 70-50 hard stop before deactivated. Nothing on the driving display to indicate a need to brake.

1 Affected Product ⌄

☐ **Request Research** (Services fees apply)



**April 10, 2022** NHTSA ID NUMBER: 11460314

### Components: FORWARD COLLISION AVOIDANCE



**NHTSA ID Number:** 11460314

**Incident Date** April 10, 2022

**Consumer Location** SAN MARCOS, CA

**Vehicle Identification Number** 5YJYGDEE5MF****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | While driving in the adaptive cruise control the vehicle will suddenly go into a hard brake while at highway speeds. This has happened multiple times during both day and night, on roads varying from two lane highways to larger multi lane interstate freeways, and during weather conditions have always been clear. This feature has been typically only been used when traffic is light, as this problem has been documented by countless Tesla Y owners. This issue has been documented and reported to Tesla via the in vehicle reporting feature. When this happens it is a sudden and unexpected action that may cause another vehicle to rear end me, and or possibly loose control during the hard and sudden braking. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**1 Affected Product** ⌄

☐ **Request Research** (Services fees apply)

---

**April 3, 2022** NHTSA ID NUMBER: 11459454

### Components: VEHICLE SPEED CONTROL, FORWARD COLLISION AVOIDANCE



**NHTSA ID Number:** 11459454

**Incident Date** March 16, 2022

**Consumer Location** CLE ELUM, WA

**Vehicle Identification Number** 5YJYGAEE5MF****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | Frequent abrupt and unsafe phantom braking while using cruise control. Mostly due to headlights from semi-trucks coming in opposite direction but occasionally from just a dark patch on the road. On a long road trip from WA to AZ, it made using the speed control feature impossible. The vehicle would lurch hard enough to physically throw you forward in your seat and rapidly slow the car (increasing potential to be rear ended). No warning messages or failure notifications. The problem was reported to Tesla (not to police, insurance, etc because no accident ensued) and the response was in a nutshell "it is working how it should ". |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**1 Affected Product** ⌄

☐ **Request Research** (Services fees apply)



February 20, 2022 NHTSA ID NUMBER: 11453075

**Components: FORWARD COLLISION AVOIDANCE**

NHTSA ID Number: 11453075

Incident Date February 19, 2022

Consumer Location BEAVERTON, OR

Vehicle Identification Number 5YJYGDEE8MF****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | Phantom braking. I have had numerous incidents of phantom braking, and can reproduce the problem at will on a particular stretch of road. It happens regularly on city streets, occasionally on Interstate highways. It is sufficiently unreliable as to be worthless. I reported the problem to Tesla online in a service request, and was told that the problem will be or has been solved with software. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

1 Affected Product ▾

☐ Request Research (Services fees apply)



July 10, 2022 NHTSA ID NUMBER: 11473240

**Components: FORWARD COLLISION AVOIDANCE**

NHTSA ID Number: 11473240

Incident Date July 10, 2022

Consumer Location LOS RANCHOS DE ALBUQUERQUE, NM

Vehicle Identification Number 5YJ3E1EB5NF****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | Driving I-25 south in clear and sunny weather at posted speed limit, clear road in front of us, automatic brakes engages for no reason. Car behind us had to take evasive maneuver to avoid collision. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

1 Affected Product ▾

☐ Request Research (Services fees apply)

54.     The above complaints represent only a small sampling of otherwise voluminous complaints regarding the Sudden Unintended Braking Defect that members of the Class have reported to the NHTSA and Tesla directly.

55.     In short, Tesla knew the Sudden Unintended Braking Defect was present in all Class Vehicles equipped with the Autopilot AEB system, as demonstrated above, but it failed to remedy the Defect. Tesla's halfhearted and unconscionable acts deprived and continue to deprive Plaintiff and Class members of the benefit of their bargain. Had Plaintiff and Class members known about the Defect, they would not have purchased their Class Vehicles, or certainly would have paid less to do so.

**C.     Tesla Touted the Safety of the Class Vehicles and the Capabilities of the Autopilot AEB System, Concealing the Sudden Unintended Braking Defect**

56.     Tesla's overarching marketing message for the Class Vehicles, and specifically the Autopilot system, was and is that the Autopilot system creates a safe and reliable vehicle. This marketing message is false and misleading given the Sudden Unintended Braking Defect, which distracts Class Members and can cause the Class Vehicles to suddenly and unexpectedly come to a stop in the middle of the road.

57.     For example, Tesla dedicates a page on its website to the Autopilot system, where it represents that "Autopilot enables your car to steer, accelerate and brake automatically within its lane."[18]

---

[18] tesla.com/autopilot

1
2
3
4
5
6
7
8
9

# Autopilot

Autopilot advanced safety and convenience features are designed to assist you with the most
burdensome parts of driving. Autopilot introduces new features and improves existing
functionality to make your Tesla safer and more capable over time.

Autopilot enables your car to steer, accelerate and brake automatically within its lane.

Current Autopilot features require active driver supervision and do not make the vehicle
autonomous.

10   The same page represents that the Autopilot system's "Forward looking side cameras" "provide

11   additional safety when entering intersections with limited visibility."[19]

12
13
14
15
16
17
18
19
20
21



**Forward Looking Side Cameras**

90 degree redundant forward looking side cameras
look for cars unexpectedly entering your lane on the
highway and provide additional safety when entering
intersections with limited visibility.

22   The same page also touts the "Standard Safety Features" of the Autopilot system as including

23   "Automatic Emergency Braking" which is "[d]esigned to detect objects that the car may impact

24   and applies the brakes accordingly."[20]

25
26
27

---

[19] *Id.*

28   [20] *Id.*

1
2
3
4
5
6
7
8

**Standard Safety Features**

The following standard safety features will continue to be active on all new cars.

**Automatic Emergency Braking**

Designed to detect objects that the car may impact and applies the brakes accordingly

**Side Collision Warning**

Warns the driver of potential collisions with obstacles alongside the car

**Front Collision Warning**

Helps warn of impending collisions with slower moving or stationary cars

**Auto High Beams**

Adjusts high/low beams as required

9      58.     Tesla also dedicates a page on its website to safety features more generally, where it

10  states that its hardware provides "exceptional awareness" and that "every Tesla" has "Active Safety

11  features" which are "powered by Tesla's Autopilot Technology" and "can help reduce impact

12  severity or prevent accidents from happening altogether."[21]

13
14  Hardware
    **Exceptional Awareness**                    Eight cameras and powerful vision processing provide 360 degrees of visibility, detecting nearby objects like pedestrians, bicyclists and vehicles.

15
16
17  Active Safety
    **For Every Tesla**                          Powered by Tesla's Autopilot technology, active safety features can help reduce impact severity or prevent accidents from happening altogether.

18

19      59.     The "Safety" page also has a video depicting the "Automatic Emergency Braking"

20  system, stating it "[c]an detect vehicles, pedestrians, or objects in front of you and applies the

21  brakes to mitigate impact."[22]

22
23
24
25
26
27  _____

    [21] https://www.tesla.com/safety

28  [22] *Id.*

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                              23



| Automatic Emergency Braking | Forward Collision Warning | Blind Spot Collision Warning | Lane Departure Avoidance |
|---|---|---|---|
| Can detect vehicles, pedestrians or objects in front of you and applies the brakes to mitigate impact | Provides visual and audible warnings of impending collisions with vehicles or obstacles | Warns when a possible collision is detected with a vehicle or obstacle in your blind spot | Applies corrective lane-centering steering if a potential collision or unintended lane departure is detected |

60.     The "Safety" page also states that Tesla software gets "Safer Over Time[,]" stating that

> Every mile you drive can help improve safety for you and others. With more than a million Tesla vehicles on the road, and billions of miles driven on Autopilot, we can analyze real-world scenarios from our global fleet to learn how collisions happen and how to help mitigate or prevent them in the future. With over-the-air software updates, our latest features and enhancements are available instantly.[23]

61.     Tesla further touts the safety of its vehicles as "Proven" and states that "Whether in our safety lab or outside in unpredictable conditions, we design our vehicles to exceed safety standards. Our goal is to continually maximize safety and occupant protection."[24]

62.     When the safety of the Autopilot system has come into question in the past, Tesla has vigorously reaffirmed its safety.  For example, in June of 2016, a Tesla driver was killed in a

---

[23] *Id.*

[24] *Id.*

car crash when neither he nor Tesla's Autopilot system (still in a public beta test phase at the time) detected a truck crossing the highway ahead of him.[25]  Tesla responded to the incident with a blog post stating that "[w]hen used in conjunction with driver oversight, the data is unequivocal that Autopilot reduces driver workload and results in a statistically significant improvement in safety when compared to purely manual driving."[26]  In a second blog post, Tesla described the accident as a "statistical inevitability."[27]

63.     Tesla touting the safety and reliability of the Class Vehicles and the Autopilot system while knowing of the Sudden Unintended Braking Defect and the Autopilot and AEB systems' gross underperformance is unfair and unconscionable.

64.     Although Tesla was aware of the widespread nature of the Sudden Unintended Braking Defect in the Class Vehicles, and that it posed grave safety risks, Tesla has failed to take adequate steps to notify all Class Vehicle owners of the Autopilot and provide relief.

65.     Tesla has not recalled the Class Vehicles to repair the Sudden Unintended Braking Defect and has not successfully mitigated the Defect through service campaigns or otherwise. Tesla has not offered Plaintiff and the other Class members a suitable repair or replacement of parts related to the Defect free of charge and have not reimbursed Plaintiff or all other Class members who incurred costs for repairs related to the Defect.

66.     Plaintiff and the other Class members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

67.     Tesla has deprived Plaintiff and the other Class members of the benefit of their bargain, exposed them all to a dangerous safety defect without any notice, and failed to repair or otherwise remedy the Defect contained in the Class Vehicles.  As a result of the Defect, the value of the Class Vehicles has diminished, including, without limitation, the resale value of the Class Vehicles.  Reasonable consumers, like Plaintiff, expect and assume that their vehicle's Autopilot and AEB systems and the related components are not defective and will not malfunction while

---

[25] https://www.theguardian.com/technology/2016/jul/07/tesla-elon-musk-autopilot-death-crisis-management

[26] https://www.tesla.com/blog/tragic-loss

[27] https://www.tesla.com/blog/misfortune

operating the vehicle as it is intended to be operated and thus did not receive the benefit of their

bargain, i.e., the price premium they paid attributable to the Autopilot system.

68.     Plaintiff and the other Class members further expect and assume that Tesla will not

sell or lease vehicles with known safety defects, such as the Defect, and will fully disclose any

such defect to consumers prior to purchase, or offer a suitable, non-defective, repair.

69.     Tesla received the requisite pre-suit notice and opportunity to cure in this case.

## CLASS ALLEGATIONS

70.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a) and

23(b)(1), (b)(2) and/or (b)(3) on behalf of the following Class: "All persons or entities in the

United States that purchased, lease, leased, own or owned a Tesla Vehicle that suffers from the

Sudden Unintended Braking Defect" (the "Class").

71.     Plaintiff also seeks to represent a California subclass defined as "All persons or

entities in California that purchased, lease, leased, own or owned a Tesla Vehicle that suffers from

the Sudden Unintended Braking Defect" (the "California Subclass").

72.     The Class and California Subclass are hereinafter collectively referred to as the

"Classes."

73.     Subject to additional information obtained through further investigation and

discovery, the foregoing definitions of the Classes may be expanded or narrowed by amendment or

amended complaint, or narrowed at class certification.

74.     Specifically excluded from the Classes are Defendant, Defendant's officers,

directors, agents, trustees, parents, children, corporations, trusts, representatives, employees,

principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs,

successors, assigns, or other persons or entities related to or affiliated with Defendant and/or

Defendant's officers and/or directors, the judge assigned to this action, and any member of the

judge's immediate family.

75.     **Numerosity**. The members of the proposed Classes are geographically dispersed

throughout the United States and are so numerous that individual joinder is impracticable. Upon

information and belief, Plaintiff reasonably estimates that there are hundreds of thousands of

individuals that are members of the proposed Classes. Although the precise number of proposed members is unknown to Plaintiff, the true number of members of each of the Classes is known by Defendant. More specifically, Tesla maintains databases that contain the following information: (i) the name of each Class member that leased or purchased a vehicle; and (ii) the address of each Class member. Thus, members of the proposed Classes may be identified and notified of the pendency of this action by first class mail, electronic mail, and/or published notice, as is customarily done in consumer class actions.

76.    **Typicality**. The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all other members of the Classes, paid for Class Vehicles designed, manufactured, and distributed by Defendant which are afflicted by the Defect. The representative Plaintiff, like all other members of the Classes, has been damaged by Defendant's misconduct in that he has incurred or will incur the cost of repairing or replacing this malfunctioning Autopilot AEB system and related parts as a result of the Defect. Further, the factual bases of Defendant's misconduct are common to all members of the Classes and represent a common thread of fraudulent, deliberate, and/or grossly negligent misconduct resulting in injury to all members of the Classes.

77.    **Existence and predominance of common questions of law and fact**. Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes. These common legal and factual questions include, but are not limited to, the following:

    a)  Whether the Class Vehicles suffer from the Defect;

    b)  Whether the Class Vehicles contain a design defect and/or a defect in material, manufacturing and/or workmanship;

    c)  Whether the Defect constitutes an unreasonable safety hazard;

    d)  Whether Defendant knew or should have known about the Defect and, if so, how long Defendant has known of the Defect;

    e)  Whether Defendant had a duty to disclose that the Class Vehicles suffer from the Defect;

f)   Whether Defendant breached its duty to disclose that the Class Vehicles suffer from the Defect;

g)   Whether Defendant intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the fact that the Class Vehicles suffered from the Defect;

h)   Whether Defendant negligently and falsely misrepresented or omitted material facts including the fact that the Class Vehicles suffered from the Defect;

i)   Whether Defendant made material misrepresentations and/or omissions concerning the standard, quality or grade of the Class Vehicles and the Defect;

j)   Whether members of the Classes would have paid less for the Class Vehicles if Defendant, at the time of purchase or lease, disclosed that the vehicles suffered from the Defect;

k)   Whether Defendant is liable to Plaintiff and the Classes for breaching its express and/or implied warranties;

l)   Whether Defendant is liable to Plaintiff and the Classes for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq. and/or any other statutory duties under state laws;

m)  Whether Defendant violated applicable state consumer protection statutes;

n)   Whether Defendant has been unjustly enriched; and

o)   Whether Plaintiff and the Classes are entitled to damages, restitution, equitable, injunctive, compulsory, or other relief.

78.   **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Classes. Furthermore, Plaintiff has no interests that are antagonistic to those of the Classes.

79.   **Superiority**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by members of the Classes is relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would, thus, be virtually impossible for members of the Classes, on an individual basis, to obtain effective redress for the wrongs committed against

them. Furthermore, even if members of the Classes could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

80.     In the alternative, the Classes may also be certified because:

a)   the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendant;

b)   the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c)   Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Classes as a whole.

81.     Plaintiff incorporates and realleges each of the preceding paragraphs as though fully set forth herein.

## CLAIMS FOR RELIEF

### COUNT I
**Fraudulent Omission**
**(On behalf of Plaintiff and the proposed Classes)**

82.     Plaintiff incorporates and realleges each of the preceding paragraphs as though fully set forth herein.

83.     Plaintiff brings this count on behalf of himself and the other Class members.

84.     Tesla intentionally and knowingly falsely concealed, suppressed, and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Autopilot AEB system in the Class Vehicles is defective, exposing drivers, occupants, and

1   members of the public to safety risks with the intent that Plaintiff and the other members of the

2   Classes rely on Defendant's omissions. As a direct result of Defendant's fraudulent conduct,

3   Plaintiff and the other members of the Classes have suffered actual damages.

4          85.    As a result of Defendant's failure to disclose to Plaintiff and the other members of

5   the Classes the material fact that the Autopilot system in the Class Vehicles is defective, owners

6   and lessors of the Class Vehicles are required to spend thousands of dollars to repair or replace the

7   Autopilot Defect or sell their vehicles at a substantial loss. The fact that the Autopilot system in the

8   Class Vehicles is defective is material because no reasonable consumer expects that he or she will

9   have to spend thousands of dollars for diagnosis, repair, or replacement of the Defect, and because

10  Plaintiff and the other members of the Classes had a reasonable expectation that the vehicles would

11  not suffer from the Defect.

12         86.    The fact that the Autopilot system installed in the Class Vehicles is defective is also

13  material because it presents a safety risk and places the driver and occupants at risk of serious

14  injury or death. Because of the Defect, the Class Vehicles may suddenly brake automatically while

15  driving in traffic. Drivers and occupants of the Class Vehicles are at risk for rear-end collisions and

16  other accidents caused by the Defect, and the general public is also at risk for being involved in an

17  accident with a Class Vehicle. Plaintiff and the other members of the Classes would not have

18  purchased the Class Vehicles but for Defendant's omissions and concealment of material facts

19  regarding the nature and quality of the Class Vehicles and existence of the Defect, or would have

20  paid less for the Class Vehicles.

21         87.    Defendant knew its concealment and suppression of material facts was false and

22  misleading and knew the effect of concealing those material facts. Defendant knew its concealment

23  and suppression of the Defect would sell more Class Vehicles.

24         88.    Despite notice of the Defect from, among other things, pre-production testing,

25  numerous consumer complaints, warranty data, and dealership repair orders, Defendant has not

26  recalled the Class Vehicles to repair the Defect, has not offered its customers a suitable repair or

27  replacement free of charge, and has not offered to reimburse all Class members the costs they

28

incurred relating to diagnosing and repairing the Defect or for the premium price that they paid for the Autopilot system and its AEB feature.

89.     At minimum, Defendant knew about the Defect by way of customer complaints filed with affiliated dealerships and through the NHTSA, as extensively documented above. As such, Defendant acted with malice, oppression, and fraud. Plaintiff and the other members of the Classes reasonably relied upon Defendant's knowing, affirmative and active false representations, concealment, and omissions. As a direct and proximate result of Defendant's false representations, omissions, and active concealment of material facts regarding the Defect, Plaintiff and the other members of the Classes have suffered actual damages in an amount to be determined at trial.

**COUNT II**
**Breach of Express Warranty**
**(On behalf of Plaintiff and the proposed Classes)**

90.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

91.     Plaintiff brings this count on behalf of himself and the other Class members.

92.     Defendant marketed the Class Vehicles as safe, built to last, and reliable vehicles. Such representations formed the basis of the bargain in Plaintiff's and the other Class members' decisions to purchase or lease the Class Vehicles.

93.     Defendant is and was at all relevant times a merchant and seller of motor vehicles as defined under the Uniform Commercial Code.

94.     With respect to leases, Defendant is and was at all relevant times a lessor of motor vehicles as defined under the Uniform Commercial Code.

95.     The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

96.     In connection with the purchase or lease of each of the Class Vehicles, Defendant provides warranty coverage for the Class Vehicles under one or more manufacturer's warranties. For illustrative purposes, Tesla offers a 4-year or 50,000-mile Basic Warranty that "covers the repair or replacement necessary to correct defects in the materials or workmanship of any parts

manufactured or supplied by Tesla under normal use."[28] Under warranties provided to Plaintiff and the other members of the Classes, Defendant promised to repair or replace defective components arising out of defects in materials and/or workmanship, such as the Defect, at no cost to owners or lessors of the Class Vehicles.

97.   Defendant's warranties formed a basis of the bargain that was reached when Plaintiff and the other members of the Classes purchased or leased their Class Vehicles.

98.   Despite the existence of the warranties, Defendant failed to inform Plaintiff and the other members of the Classes that the Class Vehicles contained the Defect, and, thus, wrongfully transferred the costs of repair or replacement of the Defect to Plaintiff and the other members of the Classes.

99.   Defendant has failed to provide Plaintiff or the other members of the Classes with a meaningful remedy for the Defect, in clear breach of the express warranty described above, promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts they supplied.

100.   Defendant was provided extensive pre-suit notice of the Defect, and as such has been afforded a reasonable opportunity to cure its breach of written warranties. Any additional time to do so would be unnecessary and futile because Defendant has known of and concealed the Defect and, on information and belief, has refused to repair or replace the Defect free of charge despite the Defect's existence at the time of sale or lease of the Class Vehicles.

101.   As a direct and proximate result of Defendant's breach of express warranties, Plaintiff and the other members of the Classes have been damaged in an amount to be determined at trial.

102.   Finally, because of Defendant's breach of express warranty as set forth herein, Plaintiff and the other members of the Classes assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and the other members of the

[28] Tesla, New Vehicle Limited Warranty Booklet
https://www.tesla.com/sites/default/files/downloads/tesla-new-vehicle-limited-warranty-en-us.pdf
(last visited July 11, 2022)

Classes of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

103.    On approximately July 12, 2022, Plaintiff sent Tesla a demand letter via Certified Mail, Return Receipt Requested, that complied in all respects with UCC § 2-607(a).  The letter informed Tesla of the breaches of warranty described herein, and requested that Tesla take corrective action.  Tesla has refused to comply with any aspect of the letter

### COUNT III
### Breach of Implied Warranty
### (On behalf of Plaintiff and the proposed Classes)

104.    Plaintiff incorporates and realleges each of the preceding paragraphs as though fully set forth herein.

105.    Plaintiff brings this count on behalf of himself and the other members of the Classes.

106.    Plaintiff and the other members of the Classes purchased or leased the Class Vehicles from Defendant, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Defendant was the manufacturer, distributor, warrantor, and/or seller of Class Vehicles. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

107.    Defendant is and was at all relevant times a merchant and seller of motor vehicles as defined under the Uniform Commercial Code.

108.    With respect to leases, Defendant is and was at all relevant times a lessor of motor vehicles as defined under the Uniform Commercial Code.

109.    The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

110.    Defendant impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

111.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose of providing safe and reliable

transportation. The Class Vehicles contain the Defect and present an undisclosed safety risk to drivers and occupants. Thus, Defendant breached its implied warranty of merchantability.

112.   Defendant was provided extensive pre-suit notice of the Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so would be unnecessary and futile because Defendant has known of and concealed the Defect and, on information and belief, has refused to repair or replace the Autopilot Defect free of charge despite the Autopilot Defect's existence at the time of sale or lease of the Class Vehicles.

113.   As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the other members of the Classes have been damaged in an amount to be proven at trial.

## COUNT IV
### Violation of the Magnuson-Moss Warranty Act
### (On behalf of Plaintiff and the proposed Classes)

114.   Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

115.   Plaintiff brings this count on behalf of himself and the other members of the Classes.

116.   Plaintiff satisfies the MMWA jurisdictional requirement because he alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

117.   Plaintiff and the other members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

118.   Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4)-(5).

119.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

120.   The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

121.   Defendant provided Plaintiff and the other members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6). For illustrative purposes, Tesla

offers a 4-year or 50,000-mile Basic Warranty that "covers the repair or replacement necessary to correct defects in the materials or workmanship of any parts manufactured or supplied by Tesla under normal use."[29]

122.    Under warranties provided to Plaintiff and the other members of the Class, Defendant promised to repair or replace defective AEB components arising out of defects in materials and/or workmanship, such as the Defect, at no cost to owners or lessors of the Class Vehicles. However, Defendant has failed to provide owners with a remedy to the Defect.

123.    The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

124.    Defendant breached these warranties by misrepresenting the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Defect. Without limitation, the Class Vehicles share a common defect in design, material, manufacturing and/or workmanship. The Class Vehicles are not of the standard, quality, or grade that Defendant represented at the time of purchase or lease and contain the Defect.

125.    Plaintiff and the other members of the Classes have had sufficient direct dealings with Defendant or its agents to establish privity of contract between Defendant, on the one hand, and Plaintiff and the other members of the Class, on the other hand.

126.    Affording Defendant a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendant knew of the material misrepresentations and omissions concerning the standard, quality, or grade of the Class Vehicles and the existence of the Defect, but failed to remediate the same. Likewise, Defendant failed to disclose the Defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

---

[29] Tesla, New Vehicle Limited Warranty Booklet
https://www.tesla.com/sites/default/files/downloads/tesla-new-vehicle-limited-warranty-en-us.pdf
(last visited July 11, 2022)

127.     The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

128.     Plaintiff, individually and on behalf of the other members of the Classes, seeks all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

## COUNT V
### Unjust Enrichment or Restitution
### (On behalf of Plaintiff and the proposed Classes)

129.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

130.     Plaintiff brings this count on behalf of himself and the other members of the Classes.  To the extent required by law, Plaintiff alleges this cause of action in the alternative, as permitted by Fed. R. Civ. P. 8.

131.     Plaintiff and the other members of the Classes conferred a benefit on Defendant by leasing or purchasing the Class Vehicles. Defendant was and should have been reasonably expected to provide Class Vehicles free from the Defect.

132.     Defendant unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of its false representations, omissions, and concealment of the Defect in the Class Vehicles.

133.     As a proximate result of Defendant's false representations, omissions, and concealment of the Defect in the Class Vehicles, and as a result of Defendant's ill-gotten gains, benefits and profits, Defendant has been unjustly enriched at the expense of Plaintiff and the other members of the Classes. It would be inequitable for Defendant to retain its ill-gotten profits without paying the value thereof to Plaintiff and the other members of the Classes.

134.     There is a direct relationship between Defendant on the one hand, and Plaintiff and the other class members on the other, sufficient to support a claim for unjust enrichment. Defendant failed to disclose the Defect to improve retail sales, which in turn improved wholesale sales.  Conversely, Defendant knew that disclosure of the Defect would sales and leasing of the

Class Vehicles and would negatively impact the reputation of Defendant's brand among Plaintiff and the other Class members. Defendant also knew its concealment and suppression of the Defect would discourage Plaintiff and the other Class members from seeking replacement or repair concerning the Defect, thereby increasing profits and/or avoiding the cost of such replacement or repairs.

135.    Plaintiff and the other members of the Classes are entitled to restitution of the amount of Defendant's ill-gotten gains, benefits, and profits, including interest, resulting from their unlawful, unjust. and inequitable conduct.

136.    Plaintiff and members of the putative class have been injured as a direct and proximate result of Tesla's inequitable conduct.  Plaintiff and members of the putative class lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

**COUNT VI**
**Violation of California's Consumer Legal Remedies Act**
**(Cal Civ. Code § 1750 *et seq.*)**
**(On behalf of Plaintiff and the proposed Classes)**

137.    Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

138.    Plaintiff brings this claim on behalf of himself and the other members of the Classes.

139.    Tesla is a "person" as defined by California Civil Code § 1761(c).

140.    Plaintiff and the other Class Members are "consumers" within the meaning of California Civil Code § 1761(d).

141.    By failing to disclose and concealing the defective nature of the Class Vehicles' Autopilot and AEB systems from Plaintiff and the other members of the Class, Defendant violated California Civil Code § 1770(a), as it represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised. See Cal. Civ. Code §§ 1770(a)(5), (7) & (9).

142.    Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

143.    Defendant knew that the Class Vehicles' Autopilot AEB systems suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

144.    Defendant was under a duty to Plaintiff and the other members of the Classes to disclose the defective nature of the Class Vehicles' Autopilot systems and/or the associated repair costs because: a) Defendant was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' AEBs; b) Plaintiff and the other members of the Classes could not reasonably have been expected to learn or discover that their AEBs have a dangerous safety defect until after they purchased the Class Vehicles; and c) Defendant knew that Plaintiff and the other members of the Class could not reasonably have been expected to learn about or discover the Defect.

145.    By failing to disclose the Defect, Defendant knowingly and intentionally concealed material facts and breached their duty not to do so.

146.    The facts concealed or not disclosed by Defendant to Plaintiff and the other members of the Classes are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them. Had Plaintiff and the other members of the Classes known that the Class Vehicles' AEBs were defective, they would not have purchased the Class Vehicles or would have paid less for them.

147.    Plaintiff and the other members of the Classes are reasonable consumers who do not expect that their vehicles will suffer from a Defect. That is the reasonable and objective consumer expectation for vehicles and their Autopilot and AEB systems.

148.    As a result of Defendant's misconduct, Plaintiff and the other members of the Classes have been harmed and have suffered actual damages in that the Class Vehicles and their Autopilot systems are defective and require repairs or replacement.

149.    As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiff and the other members of the Classes have suffered and will continue to suffer actual damages.

150.    Plaintiff and the members of the Classes have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Tesla alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to Plaintiff and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements.  In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

151.    Defendant was provided extensive pre-suit notice of the Defect, and as such has been afforded a reasonable opportunity to cure its breach of written warranties. Any additional time to do so would be unnecessary and futile because Defendant has known of and concealed the Defect and, on information and belief, has refused to repair or replace the Defect free of charge despite the Defect's existence at the time of sale or lease of the Class Vehicles.

152.    Plaintiff seeks restitution, injunctive relief, punitive damages, attorneys' fees, and cost.

## COUNT VII
**Violation of California's Unfair Competition Law ("UCL")**
**(Cal. Bus. & Prof. Code § 17200)**
**(On behalf of Plaintiff and the proposed Classes)**

153.    Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

154.    Plaintiff brings this claim on behalf of himself and the other members of the Classes

155.    California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

156.    Defendant knew that the Class Vehicles' Autopilot AEB systems suffered from an inherent defect, were defectively designed and/or manufactured, would fail prematurely, and were not suitable for their intended use.

157.    In failing to disclose the Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so, thereby engaging in a fraudulent business act or practice within the meaning of the UCL.

158.    Defendant was under a duty to Plaintiff and the other members of the Classes to disclose the defective nature of the Class Vehicles' Autopilot systems because: a) Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' Autopilot systems; b) Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles' Autopilot systems; and c) Defendant actively concealed the defective nature of the Class Vehicles' Autopilot systems from Plaintiff and the other Class Members at the time of sale and thereafter.

159.    The facts concealed or not disclosed by Defendant to Plaintiff and the other members of the Classes are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease Defendant's Class Vehicles, or to pay less for them. Had Plaintiff and the other members of the Classes known that the Class Vehicles suffered from the Defect described herein, they would not have purchased or leased the Class Vehicles or would have paid less for them.

160.    Defendant continued to conceal the defective nature of the Class Vehicles and their Autopilot systems even after Plaintiff and the other members of the Class began to report problems. Indeed, Defendant continues to cover up and conceal the true nature of this systematic problem today.

161.    Defendant's omissions of material facts, as set forth herein, also constitute "unfair" business acts and practices within the meaning of the UCL, in that Defendant's conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Plaintiff also asserts a violation of public policy arising from Defendant's withholding of material safety facts from consumers. Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers.

162.    Defendant's omissions of material facts, as set forth herein, also constitute unlawful business acts or practices because they violate consumer protection laws, warranty laws and the common law as set forth herein.

163.    Thus, by its conduct, Defendant has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

164.    Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

165.    Plaintiff and the members of the Class have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Safeco alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to Plaintiff and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.  Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original

funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

166.    Defendant was provided extensive pre-suit notice of the Defect, and as such has been afforded a reasonable opportunity to cure its breach of written warranties. Any additional time to do so would be unnecessary and futile because Defendant has known of and concealed the Defect and, on information and belief, has refused to repair or replace the Defect free of charge despite the Defect's existence at the time of sale or lease of the Class Vehicles.

167.    As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff and the other members of the Classes have suffered and will continue to suffer actual damages.

168.    Plaintiff seeks all available relief under this statute.

## COUNT VIII
### Breach of Implied Warranty Under the Song-Beverly Act
### (Cal. Civ. Code § 1790 *et seq.*)
### (On behalf of the Plaintiff and the proposed Classes)

169.    Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

170.    Plaintiff brings this claim on behalf of himself and the other members of the Class.

171.    Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.*, every sale of consumer goods in California is accompanied by both a manufacturer's and retail seller's implied warranty that the goods are merchantable, as defined in that Act.

172.    The Class Vehicles at issue here are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

173.    Plaintiff and the Class members who purchased the Class Vehicles are "retail buyers" within the meaning of Cal. Civ. Code § 1791.

174.   Defendant is in the business of manufacturing, assembling, producing and/or selling the Class Vehicles to retail buyers, and therefore are a "manufacturer" and "seller" within the meaning of Cal. Civ. Code § 1791.

175.   Defendant impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

176.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain the Defect and present an undisclosed safety risk to drivers and occupants.

177.   The Class Vehicles were defective at the time of sale when they left the exclusive control of Defendant or its agents.

178.   Even if Defendant's express warranty purportedly included a disclaimer, the disclaimer was legally insufficient to bar this claim.  Under section 1792.3 of the Song-Beverly Act, implied warranties of merchantability and fitness may only be waived when the sale of consumer goods is made on an "as is" or "with all faults" basis.  The Class Vehicles were not sold on an "as is" or "with all faults" basis.

179.   As a direct and proximate cause of Defendant's violation of the Song-Beverly Act, Plaintiff and Class members have been injured and harmed because they would not have purchased Class Vehicles if they knew about the defect at issue here.

180.   Plaintiff and the Class members seek all relief available under the Song-Beverly Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on behalf of himself and the other members of the Classes as follows:

A.   For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as Class representative; and naming Plaintiff's attorneys as Class Counsel representing the Class members;

B.   For an order finding in favor of Plaintiff and the other Class members on all counts asserted herein;

C.     For an order awarding statutory, compensatory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

D.     For injunctive relief enjoining the illegal acts detailed herein;

E.     For prejudgment interest on all amounts awarded;

F.     For an order of restitution and all other forms of equitable monetary relief; and

G.     For an order awarding Plaintiff his reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: August 26, 2022             **BURSOR & FISHER, P.A.**

By:    /s/ *Joel D. Smith*

Joel D. Smith (State Bar No. 244902)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: jsmith@bursor.com

**BURSOR & FISHER, P.A.**
Frederick J. Klorczyk III (State Bar No. 320783)
Matthew A. Girardi (*PHV* forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: fklorczyk@bursor.com
        mgirardi@bursor.com

*Attorneys for Plaintiff*

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, Joel D. Smith, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff Jose Alvarez Toledo ("Plaintiff") in this action.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under California Civil Code Section 1780(d) because Defendant Tesla Inc. ("Tesla") conducts substantial business in this District and most of the actions which gave rise to the claims took place in this District.  Plaintiff purchased his vehicle in this District.  Further, Plaintiff's and the putative classes' vehicles were manufactured at Tesla's factory located at 45500 Fremont Boulevard, Fremont, CA 94538.  As Tesla itself states, "every Model S, Model X and Model 3 [is] built in Fremont, where the vast majority of the vehicle's components are also made."[1]  Further, products, materials, or things processed, serviced, or manufactured by Tesla anywhere were used or consumed in this state in the ordinary course of business, commerce, trade, or use. Tesla has, at all relevant times, conducted and continues to conduct business all over the country, including in California.  Venue properly lies in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Tesla is subject to personal jurisdiction in this District.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on August 26, 2022 at Danielson, Connecticut.


                                              */s/ Joel D. Smith*
                                               Joel D. Smith

---

[1] https://www.tesla.com/factory

**EXHIBIT A**



U.S. Department
of Transportation
**National Highway
Traffic Safety
Administration**

1200 New Jersey Avenue SE.
Washington, DC  20590

May 4, 2022

<u>**SENT VIA E-MAIL**</u>

Eddie Gates
Director, Field Quality                                          NEF-104
Tesla, Inc.                                                      PE22-002
45500 Freemont Blvd.
Freemont, CA 94538

Dear Mr. Gates,

This letter is to inform you that the Office of Defects Investigation (ODI) of the National Highway Traffic Safety Administration (NHTSA) has opened a Preliminary Evaluation (PE22-002) to investigate allegations of unexpected brake activation in certain model year (MY) 2021-2022 Model 3 & Y vehicles manufactured by Tesla, Inc. (Tesla), and to request certain information.

This office has received (758) seven hundred and fifty-eight reports of unexpected brake activation in certain (MY) 2021-2022 Model 3 & Y vehicles.  A copy of each of the reports is enclosed for your information.

Unless otherwise stated in the text, the following definitions apply to these information requests:

- <u>**Level 2 ADAS**</u>[1]**:** a driver support feature (Advanced Driver Assistance System) on the vehicle that can control both steering and braking/accelerating simultaneously under some circumstances. The human driver must remain fully and continuously engaged in the (Level 2) driving task.[2]

- <u>**Subject vehicles:**</u> all model year (MY) 2021-2022 Tesla Model 3 & Y vehicles manufactured for sale or lease in the United States, including, but not limited to, the District of Columbia, and current U.S. territories and possessions.

---

[1] Unless otherwise specified herein, any terms in these information requests that relate to an Advanced Driver Assistance System (ADAS), including the SAE International levels of driving automation, should be construed to have the same meaning as any overlapping term defined in NHTSA First Amended Standing General Order 2021-01, which is located at https://www.nhtsa.gov/sites/nhtsa.gov/files/2021-08/First_Amended_SGO_2021_01_Final.pdf

[2] "Level 2" means the same as and is coterminous with the definition of "Level or Category 2 - Partial Driving Automation" in SAE J3016 Taxonomy and Definitions for Terms Related to Driving Automation Systems for On-Road Motor Vehicles § 5.3 (April 2021).

- **Subject System**: All driver assistance systems with automatic braking functions including all associated sensors, control modules, hardware, software, data, actuators, wiring, and any other systems on or off the vehicle that contributes to the conferral of any Level 2 vehicle braking system capabilities manufactured for use as original equipment or service replacement parts in the subject vehicles.

- **Alleged defect:** Any one or more of the following symptoms or conditions occurring while utilizing the subject system:

    1. Automatic collision preparation system failure or malfunction, including all associated fault codes;
    2. Allegations of false collision alert warnings by the subject system;
    3. Allegations of missed emergency braking activations by the subject system;
    4. Allegations of unnecessary emergency braking by the subject system; or
    5. Allegations of excessive or unrequested braking by the subject system.

- **Tesla: Tesla, Inc. (collectively, "Tesla"),** all of its past and present officers and employees, whether assigned to its principal offices or any of its field or other locations, including all of its divisions, subsidiaries (whether or not incorporated) and affiliated enterprises and all of their headquarters, regional, zone and other offices and their employees, and all agents, contractors, consultants, attorneys and law firms and other persons engaged directly or indirectly (e.g., employee of a consultant) by or under the control of Tesla (including all business units and persons previously referred to), who are or, in or after January 10, 2010, were involved in any way with any of the following related to the alleged defect in the subject vehicles:

    a. Design, engineering, analysis, modification or production (e.g., quality control);
    b. Testing, assessment or evaluation;
    c. Consideration, or recognition of potential or actual defects, reporting, record-keeping and information management, (e.g., complaints, field reports, warranty information, part sales), analysis, claims, or lawsuits; or
    d. Communication to, from or intended for zone representatives, fleets, dealers, or other field locations, including but not limited to people who have the capacity to obtain information from dealers.

- **Document:** "Document(s)" is used in the broadest sense of the word and shall mean all original written, printed, typed, recorded, or graphic matter whatsoever, however produced or reproduced, of every kind, nature, and description, and all non-identical copies of both sides thereof, including, but not limited to, papers, letters, memoranda, correspondence, communications, electronic mail (e-mail) messages (existing in hard copy and/or in electronic storage), faxes, mailgrams, telegrams, cables, telex messages, notes, annotations, working papers, drafts, minutes, records, audio and video recordings, data, databases, other information bases, summaries, charts, tables, graphics, other visual displays, photographs, statements, interviews, opinions, reports, newspaper articles, studies, analyses, evaluations, interpretations, contracts, agreements, jottings, agendas, bulletins, notices, announcements, instructions, blueprints, drawings, as-builts, changes, manuals, publications, work schedules, journals, statistical data, desk, portable and

computer calendars, appointment books, diaries, travel reports, lists, tabulations, computer printouts, data processing program libraries, data processing inputs and outputs, microfilms, microfiches, statements for services, resolutions, financial statements, governmental records, business records, personnel records, work orders, pleadings, discovery in any form, affidavits, motions, responses to discovery, all transcripts, administrative filings and all mechanical, magnetic, photographic and electronic records or recordings of any kind, including any storage media associated with computers, including, but not limited to, information on hard drives, floppy disks, backup tapes, and zip drives, electronic communications, including but not limited to, the Internet and shall include any drafts or revisions pertaining to any of the foregoing, all other things similar to any of the foregoing, however denominated by Tesla, any other data compilations from which information can be obtained, translated if necessary, into a usable form and any other documents.  For purposes of this request, any document which contains any note, comment, addition, deletion, insertion, annotation, or otherwise comprises a non-identical copy of another document shall be treated as a separate document subject to production. In all cases where original and any non-identical copies are not available, "document(s)" also means any identical copies of the original and all non-identical copies thereof.  Any document, record, graph, chart, film or photograph originally produced in color must be provided in color.  Furnish all documents whether verified by Tesla or not.  If a document is not in the English language, provide both the original document and an English translation of the document.

- **Other Terms:**  To the extent that they are used in these information requests, the terms "claim," "consumer complaint," "dealer field report," "field report," "fire," "fleet," "good will," "make," "model," "model year," "notice," "property damage," "property damage claim," "rollover," "type," "warranty," "warranty adjustment," and "warranty claim," whether used in singular or in plural form, have the same meaning as found in 49 CFR 579.4.

In order for my staff to evaluate the alleged defect, certain information is required.  Pursuant to 49 U.S.C. § 30166, please provide numbered responses to the following information requests. Insofar as Tesla has previously provided a document to ODI, Tesla may produce it again or identify the document, the document submission to ODI in which it was included and the precise location in that submission where the document is located.  When documents are produced, the documents shall be produced in an identified, organized manner that corresponds with the organization of this information request letter (including all individual requests and subparts). When documents are produced and the documents would not, standing alone, be self-explanatory, the production of documents shall be supplemented and accompanied by explanation.

Please repeat the applicable request verbatim above each response.  After Tesla's response to each request, identify the source of the information and indicate the last date the information was gathered.

1. State, by model and model year, the number of subject vehicles Tesla has manufactured for sale or lease in the United States.  Separately, for each subject vehicle manufactured to date by Tesla, state the following:

   a. Vehicle identification number (VIN);
   b. Model;
   c. Model Year;
   d. Subject component trade / trim name, part number and design version installed as original equipment;
      i)   Software version;
      ii)  Firmware version;
      iii) Hardware version;
   e. Date of manufacture;
   f. Date warranty coverage commenced;
   g. Date and mileage at which the "Full Self Driving" (FSD) option was enabled;
   h. The State in the United States where the vehicle was originally sold or leased (or delivered for sale or lease).
   i. Latest known vehicle mileage and commensurate date;
   j. Cumulative mileage covered with the subject system engaged; and
   k. Date and identities of the most recent software, firmware, and hardware updates.

   Provide the table in Microsoft Access 2010, or a compatible format, entitled "PRODUCTION DATA."

2. State the number of each of the following, received by Tesla, or of which Tesla is otherwise aware, which relate to, or may relate to, the alleged defect in the subject vehicles:

   a. Consumer complaints;
   b. Field reports;
   c. Reports involving a crash, injury or fatality;
   d. Property damage claims;
   e. Third-party arbitration proceedings where Tesla, Inc. is or was a party to the arbitration; and
   f. Lawsuits, both pending and closed, in which Tesla, Inc. is or was a defendant or codefendant.

   For subparts "a" through "f" state the total number of each item (e.g., consumer complaints, field reports, etc.) separately.  Multiple incidents involving the same vehicle are to be counted separately.  Multiple reports of the same incident are also to be counted separately (i.e., a consumer complaint and a field report involving the same incident in which a crash occurred are to be counted as a crash report, a field report and a consumer complaint).

   In addition, for items "e" and "f," provide a summary description of the alleged problem and causal and contributing factors and Tesla's assessment of the problem, with a summary of the significant underlying facts and evidence.  For items "e" and "f," identify the parties to the action, as well as the caption, court, docket number, and date on which the complaint or other document initiating the action was filed.

3. Separately, for each item (complaint, report, claim, notice, or matter) within the scope of your response to Request No. 2, state the following information:

    a. Tesla's file number or other identifier used;

    b. The category of the item, as identified in Request No. 2 (i.e., consumer complaint, field report, etc.);

    c. Vehicle owner or fleet name (and fleet contact person), street address, email address and telephone number;

    d. Vehicle's VIN;

    e. Vehicle's model and model year;

    f. Vehicle's mileage at time of incident;

    g. Software, firmware, and hardware versions in place at the time of the incident, along with vehicle and mileage and date of installation; Incident date, local time, and local time zone;

    h. Report or claim date;

    i. Whether a crash is alleged;

    j. Incident description including;

        a. Whether FSD was active at the time of the incident;

        b. AEB braking activation; yes or no;

        c. Initial Speed of braking event;

        d. Final Speed of braking event;

        e. Average Deceleration during event;

        f. Max Deceleration during event;

        g. Video; yes or no;

        h. Target detected during event;

Provide this information in Microsoft Access 2010, or a compatible format, entitled "REQUEST NUMBER TWO DATA."

4. Produce copies of all documents, telematics reports / data, imagery (video or photo), and data logs related to each item within the scope of Request No. 2. Organize the documents separately by category (i.e., consumer complaints, field reports, etc.) and describe the method Tesla used for organizing the documents. Describe in detail the search methods and search criteria used by Tesla to identify the items in response to Request No. 2.

In addition, provide a full copy of any expert report that has been produced by Tesla or received from another party in a lawsuit, arbitration, or a pre-suit claim regarding the incidents identified in Request Number 2. This includes any reports produced or exchanged for experts designated by any part in such litigation, including Tesla, plaintiff (s), or co-defendants. This does not include reports that Tesla has never produced to another party, to the extent Tesla claims a privilege exists for such a report.

5. State, by model and model year, a total count for all of the following categories of claims, collectively, that have been received to date that relate to, or may relate to, the alleged defect in the subject vehicles: warranty claims; extended warranty claims; claims for good will services that were provided; field, zone, or similar adjustments and reimbursements; and

warranty claims or repairs made in accordance with a procedure specified in a technical service bulletin or customer satisfaction campaign.

Separately, for each such claim, state the following information:

a.  Tesla's claim number;
b.  Vehicle owner or fleet name (and fleet contact person), street address, email address and telephone number;
c.  VIN;
d.  Repair date;
e.  Vehicle mileage at time of repair;
f.  Repairing dealer's or facility's name, telephone number, city and state or ZIP code;
g.  Labor operation number(s);
h.  Problem code(s);
i.  Diagnostic trouble code(s);
j.  Replacement part number(s) and description(s);
k.  Concern stated by customer;
l.  Cause as stated on the repair order;
m.  Correction as stated on the repair order; and
n.  Additional comments, if any, by dealer/technician relating to claim and/or repair.

Provide this information in Microsoft Access 2010, or a compatible format, entitled "WARRANTY DATA."

6.  Describe in detail the search methods and search criteria used by Tesla to identify the claims in response to Request No. 5, including the labor operations, problem codes, diagnostic trouble codes, part numbers and any other pertinent parameters used.

Provide a list of all labor operations, labor operation descriptions, problem codes, and problem code descriptions, diagnostic trouble codes and diagnostic trouble code descriptions applicable to the alleged defect in the subject vehicles.  State whether the diagnostic trouble codes are automatically reported to the warranty database electronically or manually entered into the warranty database by a claims administrator.

State, by make and model year, the terms of the new vehicle warranty coverage offered by Tesla on the subject vehicles (i.e., the number of months and mileage for which coverage is provided and the vehicle systems that are covered).  Describe any extended warranty coverage option(s) that Tesla offered for the subject vehicles and state by option, model, and model year, the number of vehicles that are covered under each such extended warranty.

7.  Produce copies of all service, warranty, and other documents that relate to, or may relate to, the alleged defect in the subject vehicles, that Tesla has issued to any dealers, regional or zone offices, field offices, fleet purchasers, or other entities.  This includes, but is not limited to, bulletins, advisories, informational documents, training documents, or other documents or communications, with the exception of standard shop manuals.  Also include the latest draft copy of any communication that Tesla is planning to issue within the next 120 days.

8. Describe all assessments, analyses, tests, test results, studies, surveys, simulations, investigations, inquiries and/or evaluations (collectively, "actions") that relate to, or may relate to, the alleged defect in the subject vehicles that have been conducted, are being conducted, are planned, or are being planned by, or for, Tesla.  For each such action, provide the following information:

    a.  Action title or identifier;
    b.  The actual or planned start date;
    c.  The actual or expected end date;
    d.  Brief summary of the subject and objective of the action;
    e.  Engineering group(s)/supplier(s) responsible for designing and for conducting the action; and
    f.  A brief summary of the findings and/or conclusions resulting from the action.

For each action identified, provide copies of all documents related to the action, regardless of whether the documents are in interim, draft, or final form.  Organize the documents chronologically by action.

9. Describe all hardware and software modifications or changes made by, or on behalf of, Tesla in the design, material composition, manufacture, quality control, supply, or installation of the subject system, from the start of production to date, which relate to, or may relate to, the alleged defect in the subject vehicles.  For each such modification or change, provide the following information:

    a.  The date or approximate date on which the modification or change was incorporated into vehicle production;
    b.  A detailed description of the modification or change;
    c.  The reason(s) for the modification or change;
    d.  The part number(s) (service and engineering) of the original component;
    e.  The part number(s) (service and engineering) of the modified component;
    f.  The firmware version (service and engineering) of the original system;
    g.  The firmware version (service and engineering) of the modified system);
    h.  Whether the original unmodified component was withdrawn from production and/or sale, and if so, when;
    i.  When the modified component was made available as a service component; and
    j.  Whether the modified component can be interchanged with earlier production components.

Also, provide the above information for any modification or change that Tesla is aware of which may be incorporated into vehicle production within the next 120 days.

10. Describe, and provide copies of, all documents relating to each of the following topics regarding the alleged defect in the subject systems in the subject vehicles:

    a.  Detailed description of the system design and operation, including all associated sensor technologies and specifications;
    b.  Describe and provide copies of all documents relating to all active emergency braking system function diagrams with detailed system operation points such as Min/Max speed

activation thresholds (mph), Min/Max braking g-force, brake pedal release threshold (mm or m/sec$^2$), steering wheel release input threshold rates, acceleration pedal release threshold (mm or m/sec$^2$), TTCs (audio/visual warning activation, restraint activation, brake activation), FORs (Field Occurrence Rates), and brake pressure available on each wheel (FL(front left), FR(front right), RL(rear left), RR(rear right));

c. Tesla robustness testing related to road topology (e.g., metal bridges, Clothoid, S-shape curves…etc.), vehicle driving fluctuations (e.g., frequent steering, pitch change…etc.), vehicle direction (e.g., oncoming traffic, cross traffic, adjacent areas…etc.), vehicle sizes (e.g. a large truck), camera vision system reflection characteristics (material and shape), interference (e.g., shadow patterns, horizon glare, other object detection/classification patterns), blockage (e.g., dirt, snow, heavy rain…etc.), and small body detection (e.g., infants, animals…etc.);

d. For each sensor and camera configuration, list end-to-end system suppliers, sensor type, camera type, specific vehicle locations, range, FOV (Field of Vision), and all horizontal and vertical calibration procedures; and

e. All system related controllers and sensors DRBFM (Design Review Based on Failure Modes), D-FMEA (Design-Failure Mode and Effect Analysis) or IQ-FMEA (IQ software-Failure Mode and Effect Analysis) signed off by Tesla DNR engineers.

f. Any kits that have been released or developed by Tesla for use in service repairs to the subject component/assembly.

11. Furnish Tesla's assessment of the alleged defect in the subject system of the subject vehicles. Provide separate responses for each condition that may result in unnecessary autonomous braking. Include the following information for each condition:

a. The causal or contributory factor(s);

b. The failure mechanism(s);

c. The failure mode(s), including the specific operating conditions at which the unnecessary autonomous braking can occur (e.g., vehicle speed, driving scenario);

d. Tesla's assessment of the safety risk of each condition;

e. Tesla's assessment of factors affecting the operator's ability to resume safe operation of the vehicle, including reports alleging repeatable system malfunction within the same driving cycle and after restarting the vehicle; and

f. The risk to motor vehicle safety that it poses; and

g. What warnings, if any, the operator and the other persons both inside and outside the vehicle would have that the alleged defect was occurring, or subject component was malfunctioning; and

h. The reports included with this inquiry.

**Legal Authority for This Request**

This letter is being sent to Tesla pursuant to 49 U.S.C. § 30166, which authorizes NHTSA to conduct any investigation that may be necessary to enforce Chapter 301 of Title 49 and to request reports and the production of things.  It constitutes a new request for information.

**Civil Penalties**

Tesla's failure to respond promptly and fully to this letter could subject Tesla to civil penalties pursuant to 49 U.S.C. § 30165 or lead to an action for injunctive relief pursuant to 49 U.S.C. § 30163.  (Other remedies and sanctions are available as well.)  The Vehicle Safety Act, 49 U.S.C. § 30165(a)(3), provides for civil penalties of up to $24,423 per violation per day, with a maximum of $114,954,525 for a related series of daily violations, for failing or refusing to perform an act required under 49 U.S.C. § 30166.  See 49 C.F.R. § 578.6(a)(3).  This includes failing to respond completely, accurately, or in a timely manner to ODI information requests.

If Tesla cannot respond to any specific request or subpart(s) thereof, please state the reason why it is unable to do so.  If on the basis of attorney client, attorney work product, or other privilege, Tesla does not submit one or more requested documents or items of information in response to this information request, Tesla must provide a privilege log identifying each document or item withheld, and stating the date, subject or title, the name and position of the person(s) from, and the person(s) to whom it was sent, and the name and position of any other recipient (to include all carbon copies or blind carbon copies), the nature of that information or material, and the basis for the claim of privilege and why that privilege applies.

**Confidential Business Information**

**All business confidential information must be submitted directly to the Office of Chief Counsel as described in the following paragraph and should not be sent to this office.**  In addition, do not submit any business confidential information in the body of the letter submitted to this office.  Please refer to PE22-002 in Tesla, Inc. response to this letter and in any confidentiality request submitted to the Office of Chief Counsel.

If Tesla, Inc. claims that any of the information or documents provided in response to this information request constitute confidential commercial material within the meaning of 5 U.S.C. § 552(b)(4), or are protected from disclosure pursuant to 18 U.S.C. § 1905, Tesla, Inc. must submit supporting information together with the materials that are the subject of the confidentiality request, in accordance with 49 CFR Part 512.  Additional information can be found here:https://www.nhtsa.gov/coronavirus/submission-confidential-business-information.

If you have any questions regarding submission of a request for confidential treatment, contact Daniel Rabinovitz, Trial Attorney, Office of Chief Counsel at daniel.rabinovitz@dot.gov or (202) 366-8534.

**Due Date**

Tesla's response to this letter, in duplicate, together with a copy of any confidentiality request, must be submitted to this office by **June 20, 2022**.  Tesla's response must include all non-confidential attachments and a redacted version of all documents that contain confidential information.  If Tesla, Inc. finds that it is unable to provide all of the information requested within the time allotted, Tesla, Inc. must request an extension from me at (202) 366-5226 no later than five business days before the response due date.  If Tesla, Inc. is unable to provide all of the information requested by the original deadline, it must submit a partial response by the original deadline with whatever information Tesla, Inc. then has available, even if an extension has been granted.

Please send email notification to Ajit Alkondon at ajit.alkondon@dot.gov and to ODI_IRresponse@dot.gov when Tesla, Inc. sends its response to this office and indicate whether there is confidential information as part of Tesla's response.

If you have any technical questions concerning this matter, please call Ajit Alkondon of my staff at (202) 366-3565.

Sincerely,

*Gregory Magno*

Gregory Magno, Chief
Vehicle Defects Division D
Office of Defects Investigation

Enclosure 1, Copies of the subject reports referenced in the introduction of this letter identified by the following ODI reference numbers.

11422581, 11424607, 11432896, 11433125, 11435659, 11437066, 11439015, 11439044, 11439113,
11439627, 11439689, 11439876, 11439924, 11440477, 11440478, 11440519, 11440598, 11440662,
11440921, 11440953, 11441036, 11441199, 11441206, 11441236, 11441393, 11441587, 11441651,
11441698, 11441955, 11441957, 11441960, 11442036, 11442044, 11442199, 11442291, 11442335,
11442554, 11442747, 11442775, 11442777, 11442852, 11442937, 11443110, 11443226, 11443253,
11443491, 11443714, 11443897, 11444044, 11444508, 11444600, 11444619, 11445838, 11446268,
11446804, 11447065, 11447350, 11447511, 11447787, 11448296, 11448306, 11448386, 11448397,
11448479, 11448623, 11449334, 11449340, 11449468, 11449612, 11449658, 11449728, 11449732,
11449799, 11449851, 11449873, 11449874, 11449880, 11449882, 11449883, 11449884, 11449899,
11449908, 11449910, 11449915, 11449917, 11449926, 11449933, 11449961, 11449967, 11449971,
11449977, 11449980, 11449982, 11449991, 11450002, 11450011, 11450012, 11450018, 11450019,
11450020, 11450022, 11450030, 11450035, 11450039, 11450063, 11450078, 11450085, 11450096,
11450102, 11450103, 11450118, 11450123, 11450129, 11450142, 11450143, 11450146, 11450153,
11450156, 11450171, 11450182, 11450183, 11450189, 11450192, 11450193, 11450194, 11450197,
11450221, 11450224, 11450225, 11450230, 11450234, 11450240, 11450245, 11450260, 11450261,
11450263, 11450283, 11450292, 11450299, 11450300, 11450318, 11450322, 11450323, 11450326,
11450343, 11450350, 11450356, 11450364, 11450377, 11450378, 11450406, 11450411, 11450431,
11450456, 11450459, 11450463, 11450481, 11450482, 11450485, 11450490, 11450498, 11450499,
11450507, 11450520, 11450534, 11450535, 11450539, 11450541, 11450551, 11450610, 11450628,
11450632, 11450647, 11450656, 11450664, 11450793, 11450805, 11450816, 11450864, 11450868,
11419673, 11422267, 11429825, 11432109, 11437264, 11437979, 11439075, 11439792, 11439881,
11439975, 11439978, 11440149, 11440516, 11440580, 11440581, 11440611, 11440638, 11440687,
11440818, 11440857, 11440892, 11441161, 11441400, 11441457, 11441522, 11441689, 11441777,
11441827, 11441879, 11441880, 11441906, 11442622, 11442690, 11442803, 11443194, 11443310,
11443589, 11443709, 11443841, 11443861, 11444136, 11444212, 11444832, 11445016, 11445323,
11445716, 11445740, 11446231, 11446402, 11446403, 11446459, 11446758, 11447208, 11447292,
11447397, 11447475, 11447875, 11447934, 11448117, 11448260, 11448556, 11448854, 11448951,
11449109, 11449417, 11449493, 11449538, 11449801, 11449816, 11449825, 11449863, 11449879,
11449888, 11449907, 11449913, 11449927, 11449930, 11449935, 11449936, 11449943, 11449945,
11449948, 11449950, 11449969, 11449972, 11449975, 11449981, 11449993, 11450004, 11450014,
11450024, 11450047, 11450052, 11450054, 11450057, 11450060, 11450068, 11450070, 11450076,
11450083, 11450090, 11450093, 11450109, 11450117, 11450127, 11450133, 11450134, 11450145,
11450154, 11450166, 11450169, 11450172, 11450199, 11450212, 11450227, 11450229, 11450231,
11450232, 11450237, 11450238, 11450247, 11450253, 11450259, 11450270, 11450290, 11450303,
11450308, 11450310, 11450317, 11450319, 11450327, 11450328, 11450349, 11450355, 11450366,
11450368, 11450370, 11450371, 11450375, 11450380, 11450387, 11450388, 11450389, 11450395,
11450420, 11450434, 11450467, 11450475, 11450493, 11450496, 11450542, 11450544, 11450559,
11450567, 11450568, 11450587, 11450603, 11450611, 11450616, 11450645, 11450653, 11450668,
11450714, 11450749, 11450840, 11450862, 11450870, 11450894, 11450927, 11450990, 11451012,
11451049, 11451079, 11451088, 11451012, 11450990, 11451079, 11450927, 11451049, 11451167,
11451141, 11451297, 11451111, 11451118, 11451243, 11451173, 11451422, 11451409, 11451459,
11451517, 11451463, 11451595, 11451586, 11451643, 11451694, 11451658, 11451626, 11451770,

11451791, 11451792, 11451848, 11451909, 11452143, 11452069, 11452070, 11452139, 11452214,
11452193, 11452181, 11452306, 11452627, 11452618, 11452409, 11452429, 11452352, 11452644,
11452503, 11452375, 11452421, 11452519, 11452540, 11452570, 11452532, 11452472, 11452617,
11452647, 11452639, 11452358, 11452384, 11452458, 11452522, 11452523, 11452510, 11452494,
11452623, 11452355, 11452573, 11452598, 11452605, 11452450, 11452591, 11452526, 11452487,
11452521, 11452479, 11452415, 11452364, 11452402, 11452649, 11452581, 11452359, 11452645,
11452499, 11452436, 11452530, 11452368, 11452481, 11452602, 11452507, 11452430, 11452583,
11452441, 11452544, 11452335, 11452560, 11452447, 11452559, 11452443, 11452361, 11452642,
11452456, 11452449, 11452551, 11452471, 11452428, 11452478, 11452515, 11452628, 11452527,
11452616, 11452466, 11452630, 11452626, 11452432, 11452407, 11452550, 11452376, 11452556,
11452391, 11452783, 11452871, 11452706, 11452796, 11452673, 11452870, 11452823, 11452781,
11452798, 11452834, 11452709, 11452833, 11452662, 11452835, 11452687, 11452818, 11452912,
11452678, 11452878, 11452854, 11452718, 11452726, 11452701, 11452702, 11452735, 11452680,
11452829, 11452886, 11452657, 11452852, 11452688, 11452797, 11452770, 11452850, 11452764,
11452889, 11452884, 11452888, 11452887, 11452725, 11452918, 11452691, 11452676, 11452723,
11452758, 11452683, 11452864, 11452863, 11452721, 11452985, 11453024, 11452972, 11452960,
11453053, 11452987, 11453031, 11453045, 11452982, 11453000, 11453011, 11452992, 11452955,
11452947, 11452969, 11452949, 11452994, 11453028, 11452966, 11453052, 11452939, 11452975,
11452943, 11453025, 11452929, 11452948, 11453050, 11452981, 11452971, 11453033, 11452998,
11452977, 11452925, 11452964, 11452930, 11452986, 11453060, 11453096, 11453164, 11453069,
11453162, 11453144, 11453075, 11453067, 11453084, 11453127, 11453116, 11453123, 11453122,
11453074, 11453108, 11453289, 11453272, 11453188, 11453260, 11453305, 11453206, 11453214,
11453286, 11453294, 11453177, 11453314, 11453285, 11453250, 11453247, 11453191, 11453259,
11453512, 11453360, 11453511, 11453343, 11453384, 11453332, 11453374, 11453526, 11453431,
11453369, 11453389, 11453549, 11453427, 11453363, 11453451, 11453469, 11453464, 11453607,
11453604, 11453654, 11453702, 11453700, 11453836, 11453946, 11453849, 11453925, 11453763,
11453737, 11453841, 11454170, 11454076, 11454078, 11453992, 11454081, 11454046, 11454193,
11454187, 11454238, 11454297, 11454273, 11454263, 11454245, 11454329, 11454337, 11454377,
11454367, 11454547, 11454502, 11454432, 11454556, 11454452, 11454544, 11454552, 11454514,
11454578, 11454489, 11454674, 11454913, 11454923, 11454950, 11455031, 11455108, 11455083,
11455122, 11455128, 11455026, 11455056, 11455037, 11455136, 11455139, 11455163, 11455313,
11455424, 11455573, 11455617, 11455550, 11455695, 11455661, 11455854, 11455830, 11455882,
11455870, 11455871, 11455995, 11455980, 11455959, 11456264, 11456393, 11456435, 11456453,
11456430, 11456481, 11456677, 11456554, 11456627, 11456615, 11456884, 11456795, 11456721,
11456716, 11456811, 11456729, 11456862, 11456766, 11457004, 11457054, 11457053, 11457020,
11456977, 11457065, 11457104, 11457067, 11457355, 11457347, 11457284, 11457247, 11457350,
11457312, 11457441, 11457424, 11457434, 11457385, 11457418, 11457452, 11457374, 11457546,
11457554, 11457470, 11457467, 11457651, 11457714, 11457654, 11457620, 11457822, 11458074,
11458342, 11458280, 11458359, 11458306, 11458424, 11458417, 11458500, 11458669, 11458609,
11458668, 11458925, 11459066, 11459325, 11459454, 11459610, 11459483, 11459480, 11459471,
11459656, 11459815, 11459932, 11459987, 11460183, 11460314, 11460600, 11460567, 11460513,

11460673, 11460798, 11461179, 11461338, 11461668, 11461751, 11461991, 11462116, 11461994, 11461992, 11462334

ENCLOSURE – INFORMATION FOR REQUESTS FOR CONFIDENTIAL TREATMENT

If you believe that your response contains any material that you claim is confidential business information, submit these materials to NHTSA's Office of the Chief Counsel in accordance with 49 C.F.R. Part 512.  **All requests for confidential treatment must be submitted directly to the Office of the Chief Counsel.  Upon request, ODI will provide you with a secure file transfer link for your submission to the Office of the Chief Counsel.**

Requests for confidential treatment are governed by Part 512.  A current version of this regulation is available on the internet at http://www.ecfr.gov by selecting Title 49 "Transportation," selecting "Parts 500 – 599" and then selecting Part 512 "Confidential Business Information."

**How to request confidential treatment**:

To facilitate social distancing due to COVID-19, NHTSA is treating electronic submission as an acceptable method for submitting confidential business information to the agency under Part 512.  If you claim that any of the information or documents provided in your response constitutes confidential business information within the meaning of 5 U.S.C. § 552(b)(4), or are protected from disclosure pursuant to 18 U.S.C. § 1905, you must request a secure file transfer link from the ODI contact listed in your Information Request.  ODI will copy a representative from the Office of the Chief Counsel on the secure file transfer link for your request for confidential treatment.  You must submit supporting information together with the materials that are the subject of the confidentiality request, in accordance with Part 512, to the Office of the Chief Counsel.  Do not send a hardcopy of a request for confidential treatment to NHTSA's headquarters.

Your request must include a request letter that contains supporting information, pursuant to Part 512.8.  Your request must also include a certificate, pursuant to Part 512.4(b) and Part 512, Appendix A.

You are required to submit one unredacted "confidential version" of the information for which you are seeking confidential treatment.  Pursuant to Part 512.6, the words "ENTIRE PAGE CONFIDENTIAL BUSINESS INFORMATION" or "CONFIDENTIAL BUSINESS INFORMATION CONTAINED WITHIN BRACKETS" (as applicable) must appear at the top of each page containing information claimed to be confidential.  In the latter situation, where not all information on the page is claimed to be confidential, identify each item of information for which confidentiality is requested within brackets: "[   ]."

You are also required to submit one redacted "public version" of the information for which you are seeking confidential treatment.  Pursuant to Part 512.5(a)(2), the redacted "public version" should include redactions of any information for which you are seeking confidential treatment (i.e., the only information that should be unredacted is information for which you are **not** seeking confidential treatment).

For questions about a request for confidential treatment, please contact Dan Rabinovitz in the Office of the Chief Counsel at Daniel.Rabinovitz@dot.gov or (202)366-8534.